# EXHIBIT A

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF BEAUFORT | ) | FOURTEENTH JUDICIAL CIRCUIT |
| | ) | |
| OLDFIELD COMMUNITY | ) | CASE NO. |
| ASSOCIATION | ) | |
| BY AND THROUGH ITS CURRENT | ) | |
| BOARD OF DIRECTORS FOR AND ON | ) | |
| BEHALF OF ITS MEMBERS, | ) | |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TI OLDFIELD DEVELOPMENT, LLC; | ) | |
| TI OLDFIELD OPERATIONS, LLC, BY | ) | |
| AND THROUGH THEIR RESPECTIVE | ) | |
| BOARD DIRECTORS JOHN DOE 1 | ) | |
| THROUGH 10, INDIVIDUALLY AND | ) | |
| AS DIRECTORS BETWEEN THE TIME | ) | |
| PERIODS OF 2010 THROUGH 2015 | ) | |
| (PRE-TURNOVER); PHILLIP | ) | |
| GALBREATH, INDIVIDUALLY AND | ) | SUMMONS |
| AS DIRECTOR OF OLDFIELD | ) | |
| COMMUNITY ASSOCIATION; SF | ) | |
| OPERATIONS, LLC; WILLIAM STOLZ, | ) | |
| INDIVIDUALLY AND AS MANAGER | ) | |
| OF SF OPERATIONS, LLC;  OLDFIELD | ) | |
| HOLDINGS GA, LLC; JAMIE D. | ) | |
| SELBY, INDIVIDUALLY AND AS | ) | |
| MANAGING MEMBER OF  ELLIOT | ) | |
| GROUP HOLDINGS, LLC; ELLIOT | ) | |
| GROUP HOLDINGS, LLC; BALD | ) | |
| EAGLE  PARTNERS, LLC; AND BEP | ) | |
| OLDFIELD, LLC, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

TO:    THE ABOVE-NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer to the said Complaint on the subscribers at their offices, 25 Calhoun Street, Charleston, South Carolina,

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

within thirty (30) days after the service hereof, exclusive of the day of such service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

YOUNG CLEMENT RIVERS, LLP

s/Joseph E. DaPore
SC Bar No. 1544
P.O. Box 993, Charleston, SC  29402
(843) 720-5446; jdapore@ycrlaw.com

s/Jason A. Daigle
SC Bar No. 73308
P.O. Box 993, Charleston, SC 29402
(843)577-4000, jdaigle@ycrlaw.com

Charleston, South Carolina

Dated: February 21, 2017

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF BEAUFORT | ) | FOURTEENTH JUDICIAL CIRCUIT |
| | ) | |
| Oldfield Community Association | ) | CASE NO. |
| by and through its current board of | ) | |
| directors for and on behalf of its members, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TI Oldfield Development, LLC; | ) | |
| TI Oldfield Operations, LLC, by and | ) | |
| through their respective board directors | ) | |
| John Doe 1 through 10, individually and | ) | |
| as directors between the time periods of | ) | |
| 2010 through 2015 (pre-turnover); Phillip | ) | **COMPLAINT** |
| Galbreath, individually and as Director of | ) | **(JURY TRIAL DEMANDED)** |
| Oldfield Community Association; SF | ) | |
| Operations, LLC; William Stolz, | ) | |
| individually and as manager of SF | ) | |
| Operations, LLC;  Oldfield Holdings GA, | ) | |
| LLC; Jamie D. Selby, individually and as | ) | |
| managing member of  Elliot Group | ) | |
| Holdings, LLC; Elliot Group Holdings, | ) | |
| LLC; Bald Eagle  Partners, LLC; and BEP | ) | |
| Oldfield, LLC | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

TO:    THE ABOVE NAMED DEFENDANTS:

The Plaintiff alleges and shows the following:

1.    The Plaintiff, Oldfield Community Association, by and through its current board of

directors for and on behalf of its members (hereinafter referred to as "Plaintiff" and/or "Plaintiff

OCA"), is a South Carolina Non-Profit Corporation. Oldfield Community Association is

governed by its board of directors, which is authorized to bring this action for and on behalf of

its members.

1

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

2.      Defendants TI Oldfield Development, LLC and TI Oldfield Operations, LLC are limited liability companies formed and existing under the laws of the State of Georgia (hereinafter collectively referred to as "Defendants TI"). These Defendants are the successor entities to the original declarant for Oldfield Community Association, which was Oldfield, LLC.

3.      Defendants Bald Eagle Partners, LLC and BEP Oldfield, LLC are limited liability companies formed and existing under the laws of the states of Maryland and Delaware, respectively. Upon information and belief, Defendant BEP Oldfield, LLC is a holding company created by Defendant Bald Eagle Partners, LLC for the sole purpose of holding title to certain plots of land within the Oldfield Community, and this Defendant at all times acted in coordination with, at the direction of, and as agent for its principal, Defendant Bald Eagle Partners, LLC. These Defendants are hereinafter referred to collectively as "Defendants Bald Eagle."

4.      Defendants John Doe 1 through 10 (hereinafter "John Doe Directors") are, upon information and belief, citizens and residents of various states, including the State of South Carolina and the State of Georgia, and were the individuals appointed by Defendants TI, or during 2013 thru 2015 (as to one directorship) by Defendant Bald Eagle Partners, LLC, a limited liability company organized and existing under the state of Maryland (hereinafter "Bald Eagle"), to the Board of Directors for the Oldfield Community Association from 2010 through 2015. In the board election in 2016, the Class B control period ended. The board from that point forward consists of 6 community members and one TI director.

5.      Defendant SF Operations, LLC is, upon information and belief, a limited liability company formed and existing under the laws of the State of Georgia, and managed Defendant TI Oldfield Development, LLC during the relevant time periods.  Defendant William Stolz is, upon

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

information and belief, a citizen and resident of the State of Georgia, and acted as the manager for Defendant SF Operations. Both of these Defendants, for the purposes of this complaint, worked at all times for, on behalf of, and gave direction to Defendants TI, and as such, are included in the definition "Defendants TI" as used hereinafter in this complaint.

6. Phillip Galbreath is, upon information and belief, a citizen and resident of the state of Georgia, and was appointed to the Board of Directors of the Oldfield Community Association before its turnover from the developer by the Defendants TI. For the purposes of this complaint, Defendant Galbreath is included in the definition of "John Doe Directors."

7. At all times Defendants Bald Eagle, TI, and the named John Doe Directors were united in their voting records on all budgetary items.

8. Defendant Oldfield Holdings GA, LLC is a limited liability corporation formed and existing under the laws of the State of Georgia (hereinafter referred to as "Defendant Oldfield Holdings"). Defendant Oldfield Holdings is an entity wholly owned by Defendants TI.

9. Defendant James D. Selby (hereinafter referred to as "Defendant Selby") is a citizen and resident of the State of South Carolina, and is the managing member of Defendant Elliot Group Holdings, LLC (hereinafter referred to as "Defendant EGH"), a limited liability company formed and existing under the laws of the State of South Carolina.

## HISTORY, JURISDICTION, AND FACTS

10. The Oldfield Community is located in Beaufort County, South Carolina. This community of individual lots and common property was created with the recording of the Declaration of Covenants, Conditions and Restrictions for Oldfield in the R.M.C. Office for Beaufort County in Book 1354 at Page 1359 on November 17, 2000 (hereinafter referred to as "Governing

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

Documents" or "DCC&R"), by Oldfield, LLC, as the original developer. The Governing Documents run with the land and are incorporated by reference in every deed of real estate owned by the homeowners and members of Plaintiff OCA today, both individually and in common. The Governing Documents together with any amendments thereto are incorporated herein by reference and are hereby made part of Plaintiff's Complaint.

11.    The Plaintiff is governed by its current board of directors (hereinafter referred to as "Plaintiff Board") by virtue of its articles of incorporation, its Governing Documents, and the South Carolina Nonprofit Corporation Act. The Plaintiff Board is vested with the authority to administer the common property, to make necessary claims, and to commence legal actions to protect the property rights of its members, including actions to enforce the provisions of the Governing Documents. The Plaintiff Board is charged with a fiduciary duty to maintain and protect its members' property interests. The Plaintiff Board meets regularly and conducts business in Beaufort County, South Carolina.

12.    Upon information and belief, all of the actions which give rise to these various claims occurred in Beaufort County, South Carolina, and as such, venue is proper in this Court.

13.    The Plaintiff, as a South Carolina nonprofit corporation, was formed for the benefit of its members who are homeowners and lot owners. The members of Plaintiff OCA were, by virtue of their ownership of this property within Oldfield community, directly and adversely affected by the decisions and actions of all Defendants through the OCA Boards and the John Doe Directors of those boards before the developer turnover at end of 2015. In the case of Defendants Selby and EGH, the Plaintiff and its members were adversely affected by their wrongful acts during parts of 2016 as well.

4

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

14.     The Plaintiff Board has standing and is the proper entity to bring these claims for and on behalf of the members of Plaintiff OCA. The Plaintiff has fulfilled its contractual conditions precedent of negotiations and alternative dispute resolution with Defendants TI under the governing documents, enabling the Plaintiff Board to bring this action on behalf of its constituent homeowners.

15.     In 2000, the original developer, Oldfield, LLC, set out a plan to subdivide eight hundred fifty (850) acres in Beaufort County, South Carolina, into what will ultimately contain approximately five hundred forty (540) residential homes, a golf course, and various other amenities, including pools, eating and meeting facilities, and an outfitters center with hiking trails. Thereafter, the original developer and, subsequently, Defendants TI marketed and sold lots in the Oldfield community.

16.     In approximately 2010, Oldfield, LLC sold and/or assigned all of its remaining lots and development rights to the current Defendants TI. These Defendants functioned through their appointed John Doe Directors from approximately 2010 until the beginning of 2016. These John Doe Defendants are sued in their individual and official capacities as the directors and/or officers of OCA. On all financial matters, these Defendant directors were at all times controlled by and/or acting in cooperation with Defendants TI during the aforementioned time period. This time period is known as the "control period."

17.     Toward the end of 2013, Defendants TI sold or assigned approximately 109 lots within the community to Defendant Bald Eagle Partners, LLC. Shortly thereafter, Bald Eagle Partners, LLC assigned their interest in the lots to a subsidiary, Defendant BEP Oldfield, LLC. Defendant BEP Oldfield LLC took a warranty deed from Defendants TI for the above mentioned lots. Upon information from that point on, Defendant BEP Oldfield worked in conjunction with, at the

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

direction of, and on behalf of its principal, Defendant Bald Eagle Partners. As per the terms of the agreement to sell or assign 109 lots, Defendant TI granted Defendant Bald Eagle Partners one seat they held on the OCA Board of Directors from late 2013 through 2015.

18.     Upon information, Defendants TI, with regard to financial matters, directed and controlled the same majority of John Doe Directors who comprised the board or boards directly controlling OCA, and during this time, Defendants TI, Bald Eagle, and the John Doe Directors had a unified intent with regard to their board actions and votes. Defendants TI and SF Operations, LLC, were, and are for all purposes herein, amalgamated corporations in their dealings with the OCA members from 2010 to 2016. The legal distinctions between these corporations are blurred and indistinct. They are and/or were for all intents and purposes identical in their interests, dealings and activities in the administration of OCA. All of these Defendants owed fiduciary duties in their dealings with the members of Plaintiff OCA through their directors at all pertinent times.

19.     In 2010, Defendants TI, as successor declarants to OCA, together with and acting through Defendants Bald Eagle (from 2013) and the other John Doe Directors whom they appointed to the board, controlled all of OCA's budgeting, accounting, and general operations. Defendants TI and the John Doe Directors functioned as the successor developers from 2010 until the end of 2015, when the declarant control turnover to the OCA members began. Under the definitions contained in the Governing Documents of OCA, these Defendants, their successors, directors, officers and community members are "bound parties."

20.     In early 2016, per the provisions of the Governing Documents, the declarant control turnover process began, and the new member-controlled board of the OCA was elected by the actual homeowner members (hereinafter referred to as the "declarant control turnover"). The

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

new owner-controlled board, the Plaintiff herein, was seated, and the control period of Defendants TI ended. Following this control turnover, Plaintiff, as a part of its fiduciary duty to its members, began reviewing in-depth the past operations of the previous John Doe Directors, which included reviewing the OCA financials from 2010 through 2015 and the meeting minutes of the previous developer-controlled boards. Plaintiff also reviewed and consulted with outside expert sources that include a Certified Public Accountant and a nationally-known reserve analysis firm.

21.    The Plaintiff Board learned through its review of the past actions of the Defendants TI, acting through the John Doe Directors, of these Defendants' failure to comply with the obligations and fiduciary duties of directors as set forth in the Governing Documents. Generally, the breaches of duty revolve around OCA's budgeting, accounting, finances, and Governing Document compliance.

22.    Under the original Governing Documents, there are three separate accounts for the Association: the General Operating Fund, the Capital Reserve Fund, and the Community Enhancement Fund. Defendants TI and the John Doe Directors failed in their responsibilities to appropriately manage and fund these accounts as required under the DCC&R in multiple ways, described in detail below.

**Misappropriation of the Community Enhancement Fund**

23.    One of Plaintiff's concerns centers around a segregated monetary fund, created by §8.11 of the DCC&R, which had existed since OCA's inception. This fund, known as the Community Enhancement Fund (hereinafter referred to as "CEF"), was designed to benefit the members of OCA. This account was originally funded through an initial-sale transfer fee and was designed to be fully separate from the operating and reserve accounts.  In fact, the Governing Documents

7

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

specifically mention that this fund is to have a "segregated" character and is to be used for the sole purposes of community enhancement for the benefit of the members as specified in §8.11(c). The Governing Documents further state the CEF is not to be used to fund any expenditures otherwise contained in the budget for Common Expenses in accordance with §8.3 of the DCC&R.

24.    The strong language creating the CEF in the DCC&R vests in the individual members a property interest and a right to those funds. Originally, all OCA boards were charged with overseeing this CEF and with using it only in a manner consistent with its original purpose and with community interests as specifically outlined in the Governing Documents.

25.    In 2011, without adequate notice to the OCA members, their written approval, or vote of the members as required by common law and the Governing Documents, the John Doe Directors, at the direction of Defendants TI, voted to "re-purpose" the funding source for the CEF permanently into the Capital Reserve Fund. This unilateral change in the definition of how the CEF was to be used was a blatant breach of the duties owed to the members by Defendants TI and the John Doe Directors and was contrary to §8.11(c). The John Doe Directors' wrongful, unilateral "re-purposing" of the CEF continued for each year from 2011 through 2015.

26.    Funding the Capital Reserve Fund in accordance with §§8.1 and 8.3 of the DCC&R was an obligation of the OCA. As §8.3 mandates, the annual budget for the OCA includes the contributions to the Capital Reserve Fund in addition to other operating expenses. In the years 2011 through 2014, when Defendants merely funded the budget deficits as permitted in §8.7(b), Defendants TI were required to fund the capital reserve fund, as such funding obligation was included in the calculation of the budget deficits. In 2015, when the Defendants chose to pay the assessments, they effectively joined all other members in sharing the burden of the annual capital

8

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP070003315

contributions; however, the Defendants still would have been required to cover any budget deficits, were there any. There were unfunded deficits in 2015 which amounted to $68,853.

27.    The diversion of monies designated for the CEF into the Capital Reserve Fund unilaterally and wrongfully altered the original purpose for the CEF. The original declarant, in the Governing Documents and in the sales of the lots and homes to OCA members, represented that the CEF was the property of the members. The CEF was to be segregated and used only for specific community purposes. Instead, the CEF was used to reduce the amount of contributions to the Capital Reserve Fund required by Defendants TI. This misappropriation of transfer fees constituted a wrongful action by the John Doe Directors, at the direction and control of Defendants TI in 2011 and thereafter, for the sole purpose of reducing Defendants TI's capital reserve funding obligations.

28.    These Defendants had projected that the revenue from the CEF from the years 2011 to 2014 would be $386,240.  In fact, the actual revenue collected was approximately $108,000 less than the projected revenue.  Recently, however, Plaintiff learned from an in-depth review of the finances that $368,240 was the total amount by which Defendants TI offset their capital reserve account funding duty in years 2011 to 2014.  Also in 2015, $112,152 of CEF funds was transferred to the Capital Reserve Fund. All sources used by the Defendants from the CEF inappropriately amounted to $480,392 between 2011 and 2015.

29.    Funding the Capital Reserve Account was a separate component of the budget for Common Expenses, and during the years these Defendants controlled the board, they had the duty to ensure that the Capital Reserve Account was adequately funded. The CEF funding misappropriation by Defendants TI and the John Doe Directors in 2011 was specifically prohibited by §8.11(c) of the DCC&R.  These Defendants' "re-purposing" the monies intended

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP070700315

for the CEF was a wrongful act, was unauthorized by the Governing Documents, was unauthorized by the owners, was an infringement on a property right owned by the members, and was effectively monetary self-dealing in favor of these Defendants, in direct breach of the fiduciary duties they owed to the Plaintiff and its members as the sponsor and as directors.

### Failure to Properly Fund the Capital Reserve Account

30.     The Governing Documents require capital asset funds to be accumulated for future repairs and replacements of the many community assets, which have a defined longevity. Projected annual reserves are needed for the maintenance, repair, and/or replacement of capital assets such as roads, wooden bridges, sidewalks, fences, docks, guardhouse, storm water systems, et cetera. The Governing Documents set the prudent requirement of budgeting and funding into a reserve account amounts sufficient to meet the projected needs of capital asset replacement. Sections 8.1 and 8.3 of the DCC&R set forth the specific requirement for this budgeting and funding, which is known as the annual Common Expense Budget.

31.     It is incumbent on all the Boards of OCA to carry out this capital reserve function in administering the property.  All OCA members rely on such budgeting, and this adequate funding is essential to the health of the community and to property values.  Additionally, proper funding is a fiduciary duty owed to members by all boards governing the community. This duty was, at all times during the control period from 2010 through 2015, a function required of Defendants TI and the John Doe Directors leading up to the declarant control turnover at the end of 2015.

32.     Defendants TI and the John Doe Directors failed in two ways to properly fund the Capital Reserve Account. First, the amount of money by which they wrongfully offset their obligations with the CEF funds was based on inaccurate and inflated "projected" CEF revenue, not the actual

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

realized CEF revenue. For the years 2011 to 2014 this amounted to a capital reserve shortfall of approximately $163,532.

33.     Second, in addition to the wrongful misappropriation of the CEF, the John Doe Directors also failed to ensure the Capital Reserve Fund itself was adequate and that the projected capital outlay of future expenditures was up to date so that balances would remain sufficient to cover anticipated maintenance, repairs, and replacements of the Common Assets of the community.

34.     The John Doe Directors had based their projected budgets for the capital reserve fund on an outdated reserve study that severely underestimated the actual costs necessary to fully account for the fund's future expenditures. Further, they failed to actually contribute even the insufficient amount of Capital Reserve Fund contributions prospectively required by their own outdated and inadequate reserve study. The Plaintiff, by way of the reserve fund study recently prepared by a nationally-known reserve analysis firm, calculated the total shortfall to the capital reserve fund to be approximately $648,454 for the years only between 2011 and 2015.

35.     Defendants TI and the John Doe Directors were negligent in their wrongful actions both in reducing their funding obligations by projected CEF monetary income instead of the actual income and in relying on an erroneous and outdated reserve study that under-calculated the amount of money the Defendants TI were required to contribute to properly fund the capital reserve account for Plaintiff.

### Underfunding the General Operating Accounts

36.     Under §8.7(b) of the DCC&R, in order to fund the general operating account for the OCA, "Declarants (and Defendants TI as successors) have the option to fund budget deficits" each year or pay the assessments the Defendant controlled OCA board chose to impose. In effect, the Defendants TI had until the end of 2015 to fund the difference between the amount of

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

assessments on units subject to assessment and the amount of actual expenditures, which included providing for adequate capital reserves.

37.    In the last year of their control, 2015, Defendants TI decided to pay the assessments. In all years prior to 2015, they chose to "fund the deficit." Plaintiffs recently concluded an analysis of all operating account and reserve account deficits that should have been funded by Defendants TI and the John Doe Directors from 2010 to 2014. Upon information revealed by these analyses, Defendants TI neglected their obligation to "fund the deficit" between the actual expenditures and the assessments by a significant amount.

38.    The Defendants TI and the John Doe Directors committed wrongful acts against the Plaintiff by virtue of a turnover with significant community account deficits existing in the operating accounts and the capital reserve accounts.

### Summary of Funding Obligation Failures

39.    Upon information obtained by the Plaintiff in its review of accounting records turned over by the end of the control period in 2015, the CEF, operating, and reserve accounts for OCA were mismanaged and underfunded by a total of nearly $2.5 million dollars.

40.    The Plaintiff Board and all OCA members must now cover these significant shortfalls caused solely by these Defendants' actions, which total nearly $2.5 million. As a direct result of these budgetary deficits, the Plaintiff Board has recently voted to significantly increase assessments on its members – 10% going forward – in an attempt to close the gap in the amount of money necessary to be contributed annually to the fund the Capital Reserve Fund. The Plaintiff has also lost the Community Enhancement Fund and all the benefits those funds could have been used for, had they not been misappropriated for the benefit of Defendants TI.

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP070000315

41.    The Plaintiff has made demands and claims on these Defendants for the shortfalls described herein.  Plaintiff's claims for inadequate reserves and reimbursement have not been satisfactorily addressed by these Defendants as of the filing of this Complaint.

### The Sale of the Greeters Store

42.    Defendant Selby was the managing member of Defendant EGH.  At some point in 2016, EGH agreed to purchase from Defendants TI through Defendant Oldfield Holdings, who agreed to sell post declarant control turnover, a parcel of real estate known as the Greeters Store. This parcel of land and the Greeters Store building on it have always been integral to the functioning of the Oldfield community.  It houses security cameras and a post office, and it has served various other community functions for many years.  The Greeters Store has long been a symbol of the community; in fact, an image of it is used on the Oldfield Community's official website. All Defendants knew or should have known the Greeters Store was important to the community and was a subject in the post declarant control turnover negotiations.

43.    Defendant Selby was, at all material time in 2016 until his termination in October 2016, the Chief Operations Officer, Treasurer and/or general manager of OCA and also held the same positons for the associated entity known as Oldfield Club (hereinafter referred to as "Club"). Defendant Selby's written contract as general manager and/or Chief Operating Officer was with the Club; however, the contract imposed upon Selby many obligations to perform directly for OCA. Defendant Selby had a staff of employees who were compensated by funds from both OCA and Club.  The OCA was an understood party to the employment contract, or, in the alternative, a third-party beneficiary of the employment contract at minimum. Defendant Selby, who had been the general manager for a number of years of both OCA and Club, knew of the importance of the Greeters Store to the OCA and to the community.

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

44.     Defendant Selby knew of the financial support the OCA members paid to him over all the years he was employed by The Club.  Defendant Selby knew some portion of the Plaintiff's assessments went to fund the Greeters Store for its expenses, maintenance and upkeep. Defendant Selby knew and appreciated that the OCA's and Club's loss of control of the Greeters Store would have a detrimental effect on the community members.  Defendant Selby knew the Greeters Store was an asset the OCA and Club boards expected to be turned over to them at the end of declarant control, or, in the alternative, that they would at least have the first right to negotiate the control or purchase of it with Defendants TI.

45.     Defendant Selby knew under his written employment contract that he had a duty of loyalty to the Club, to Plaintiff OCA, and to OCA's members.  Defendant Selby was being highly compensated under the employment contract.  Defendant Selby also recognized that part of the compensation he enjoyed came from OCA funds.  Defendant Selby knew he had a specific and clear obligation in his employment agreement to inform both the OCA and Club boards when he learned of any business opportunities relating to or similar to the Club or OCA's reasonably anticipated business opportunities. Selby's employment contract specifically stated that such business opportunities are deemed to belong to his employers. Also, as general manager, Selby had a common law duty to adequately advise his principal of opportunities that might benefit the principal, and by natural extension, the Plaintiff.

46.     Defendant Selby learned of Defendants TI's plans to cut the Greeters Store out of the part and parcel turned over to the OCA and/or the Club at the end of the control period and the plans to sell it separately solely because of his employment position with the Club/OCA, which necessitated contact over the years with Defendants TI.

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

47.    Defendant Selby knew or should have known that he would be in violation of his employment contract by acting on information concerning the sale of the Greeters Store for his own gain. Defendant Selby knew or should have known that his clandestine, avaricious actions based on this inside information were a wrongful act and a breach of his fiduciary and common law duties. Likewise, Defendants TI and the John Doe Directors knew or should have known that they also owed duties of acting in good faith to the members of OCA (and Club) as former sponsors or as former or current directors of those sponsors in winding up community affairs related to the declarant control turnover.

48.    Defendants TI, John Doe Directors, and Selby knew or should have known that Selby had agreed in writing to inform the Plaintiff OCA and/or Club if he became aware of a business opportunity which could benefit the Plaintiff or Club, and that any such opportunity belonged to the OCA/Club and not to Defendant Selby. The Defendants knew or should have known that both Club and OCA had fundamental interests in the Greeters Store and had a keen interest in acquiring it either by sale or by transfer as a part of the declarant control turnover and ongoing negotiations with Defendants TI. These actions were a violation of the duties set forth in the Governing Documents that negations be conducted in "good faith" as per § 14.2(b) of the DCC&R.

49.    In 2015 or 2016, Defendants TI, the John Doe Directors, and Defendant Selby secretly began discussions regarding Defendant EGH's purchase of the Greeters Store for Defendant Selby's private business venture and gain.  Defendant Selby formed Defendant EGH for the sole purpose of purchasing the Greeters Store and acted as an officer or director of Defendant EGH. Upon information, Defendants TI and the John Doe Defendants intentionally failed to bring this sale opportunity to the Club or to the Plaintiff's attention.

15.

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

50.     Defendant EGH, through Defendant Selby, knew or should have known that by entering into a confidentiality agreement with Defendants TI concerning the sale of the Greeters Store and by executing a buy-sell agreement to purchase the Greeters Store, they would be directly interfering with and undermining the winding up of the declarant control turnover negotiations and transition period between Defendants TI and Plaintiff.  Defendants Selby and EGH knew or should have known that the purchase would be of an asset which at that time directly benefited Club and OCA operations.  Defendants TI, Selby and EGH knew this transaction was designed with only their respective pecuniary interests in mind, and that by concluding this sale, they would be preempting any possibility for the Plaintiff to gain control of this valuable community property and fixture.

51.     With this full knowledge, Defendants Selby, EGH, and Oldfield Holding conspired with Defendants TI and the John Doe Directors to carve out this parcel, sell it to Defendants Selby and EGH, and thereby foreclose any chance of the Club or Plaintiff's  gaining control of the parcel. In effect, they saw an opportunity to sell and buy the "Golden Goose," obtain maximum dollars for it, and to "take it off the table," so to speak, as an asset which would otherwise have been a central part to the turnover negotiations with both the Club and Plaintiff OCA.

52.     On October 14, 2016, Defendants TI conveyed the Greeters Store parcel to Defendant Oldfield Holding, a wholly owned entity of Defendants TI.  Four days later on October 18, 2016, Defendant Oldfield Holding conveyed the Greeters Store parcel to Defendant EGH. The affidavit attached to the deed listed the physical address of the Grantee, Defendant EGH, as the same address as Defendant Selby.

53.     The sale and its accompanying loss of the opportunity to control the Greeters Store have had a detrimental effect on the Plaintiff and its members.  The conspiratorial sale of the Greeters

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

Store was an act of self-dealing in violation of Defendant Selby's employment agreement, his duties under common law, and his duties as general manager and Chief Operations Officer of Club and OCA. The transaction and the negotiations leading up to the sale of the Greeters Store were an interference with the rights of Plaintiff OCA and Club in their administration of the affairs of their members.

54.    As a direct result of the sale of the Greeters Store, Plaintiff has expended money and time in attempting to address the hiring of new management and relocation of services. Additionally, Plaintiff OCA and Club have lost the opportunity to gain control of the Greeters Store, a parcel of real estate integrally associated with the other facilities of Plaintiff, so much so as to be considered "common property" of the Oldfield Community.

### Asset and Annexation Rights Divestment

55.    As a preamble to Article XIV of the DCC&R, the Oldfield original declarant wrote: "The growth and success of Oldfield as a community in which people enjoy living, working and playing requires good faith efforts to resolve disputes amicably, attention to and understanding of relationships within the community and with our neighbors, and protection of the rights of others who have an interest in the community." Thus, in addition to the common law duty to act in good faith, the parties to this action are under the same duty to act in good faith in resolving disputes by virtue of the Oldfield DCC&R.

56.    Upon information and belief, during the turnover period, Defendants TI have been divesting themselves of assets, such as the Greeter's store, in an attempt to become judgment-proof for turnover issues and resolution of Plaintiff's claims. Legally and equitably, any corporate veil of the Defendants' TI should be pierced for claims and damages incurred in this

action, if in fact the corporate Defendants have become judgment-proof during the pendency of this lawsuit by taking steps to sell assets.

57.    In addition, today Defendants TI continue to exert significant control over various issues affecting the Plaintiff OCA members, including, *inter alia*, over property at Oldfield and adjacent properties and over declarant rights at Oldfield, such as the right of Annexation found at § 9.1 of the DCC&R. Upon information and belief, Defendants TI may attempt to exercise that control in ways that will irreparably damage the Plaintiff during the pendency of this lawsuit, and may then use that malfeasance as leverage to urge Plaintiff to settle these complaints unfairly. Such actions would not be consistent with the requirement of putting forth a good faith effort to resolve disputes amicably.

58.    Plaintiff accordingly respectfully requests that this Court issue a preliminary injunction prohibiting Defendants from exercising their control to the detriment of the Plaintiff's members while the legal matters in this lawsuit are resolved or until a negotiated settlement is reached. Plaintiff also seeks a declaratory judgment that a Defendant's exercising of this right of annexation pursuant to §9.1 during the pendency of this lawsuit would be contrary to its obligation to deal with post-turnover issues in a responsible and good faith manner as a former sponsor of the OCA and its members.

## FOR A FIRST CAUSE OF ACTION
### AS TO DEFENDANTS TI, DEFENDANTS BALD EAGLE, AND JOHN DOE DIRECTOR DEFENDANTS
#### (Breach of Fiduciary Duties)

59.    Plaintiff incorporates by reference all allegations contained in the preceding Paragraphs which are re-alleged and restated as if repeated verbatim below.  If any allegations herein are inconsistent with previous allegations, the inconsistent allegations are to be presumed as pleadings in the alternative.

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

60.     Defendants TI, Bald Eagle, and John Doe Directors, as the successor declarants, sponsors, and controlling board of directors of OCA from 2010 through 2015, owed fiduciary duties to the Plaintiff, specifically including but in no way limited to the duty to act reasonably and in good faith for the benefit of the OCA in making decisions for community enhancement, in properly funding the capital reserves, in paying the shortfall between expenditures and assessments in the early years, and in protecting and safe-keeping the CEF for its stated purpose. Instead, these Defendants breached their respective fiduciary duties by acting negligently, wrongfully, arbitrarily, capriciously and/or selfishly, and have thus proximately caused significant monetary damage to Plaintiff and its members.

61.     These Defendants, through their Directors, breached their fiduciary duties as specifically set forth above and committed wrongful acts which amounted to putting their own monetary interests above the interests of the members of OCA.  All of the various actions, as stated, have directly and proximately caused monetary damage to the Plaintiff and its members in the form of future added assessments to replace the shortfalls in the CEF and the capital asset reserve funds and in attempting to unwind the sale of the Greeters Store.

62.     Defendants Bald Eagle, through their agent/Board member, were complicit during 2014 and 2015 and worked in conjunction with Defendants TI by instructing their appointed board member, in the ordinary scope and course of his employment with Defendants Bald Eagle and as a director, to vote and participate in these wrongful acts to the benefit of Defendants TI.  As such, Defendants Bald Eagle are liable to Plaintiff under the doctrine of *respondeat superior*.

63.     As a direct and proximate result of these Defendants' breach of fiduciary duties and other wrongful acts, Plaintiff by and on behalf of its members has suffered actual damages of

19

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

approximately $2,500,000.  Plaintiff has also suffered consequential damages in an amount to be proven at trial.

**FOR A SECOND CAUSE OF ACTION**
**AS TO DEFENDANT SELBY**
**(Breach of Fiduciary Duties and Self-Dealing)**

64.     Plaintiff incorporates by reference all allegations contained in the preceding Paragraphs which are re-alleged and restated as if repeated verbatim below.  If any allegations herein are inconsistent with previous allegations, the inconsistent allegations are to be presumed as pleadings in the alternative.

65.     Defendant Selby, as general manager, Treasurer, and chief operations officer of Club and OCA prior to October 2016, had access to special knowledge and contacts within Defendants TI and knew or should have known his actions in organizing and concealing the purchase agreement for the Greeters Store between Defendants TI and Defendant EGH amounted to self-dealing. Selby knew or should have known that the sale of the Greeters Store would be detrimental to Plaintiff's reasonably prospective contractual rights to the store.   As a direct result of his wrongful acts, the pecuniary and communal interests of the Plaintiff and its members were adversely affected.

66.     The actions of Defendant Selby amount to wrongful acts and a breach of his fiduciary duties, imposed both by his employment contract and by common law principal/agent principles, in failing to put Plaintiff's interest above his own. As such they constituted a material breach of the terms of his employment contract with Plaintiff's associated entity, the Oldfield Club and are likewise a breach of his common law duties owed to the Plaintiff as his principal.

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP070003315

67.    As a direct and proximate result of Defendant Selby's breach of fiduciary duties and self-dealing, Plaintiff and its members have suffered actual and consequential damages as outlined above and are entitled to judgment against Defendant Selby for those damages.

### FOR A THIRD CAUSE OF ACTION
### AS TO DEFENDANT SELBY
#### (Breach of Contract)

68.    Plaintiff incorporates by reference all allegations contained in the preceding Paragraphs which are re-alleged and restated as if repeated verbatim below.  If any allegations herein are inconsistent with previous allegations, the inconsistent allegations are to be presumed as pleadings in the alternative.

69.    Plaintiff was an understood party to the employment contract between Defendant Selby and the Oldfield Club, and as such, had the same rights and expectations of Selby under the contract as the Oldfield Club. Alternatively, if Plaintiff is found not to be a party to the employment contract, Plaintiff is at the very least a third-party beneficiary of that contract based upon the contract's explicit language that Selby was required to "Manage all aspects of the operations of . . . Oldfield Community Association . . . ."

70.    Through his actions, and with the help of Defendants TI, Selby breached his contract with the Club/Plaintiff when he illicitly purchased the Greeters Store without regard to his employers' reasonable expectation of that business opportunity.

71.    Because of the wrongful breach of his employment contract, Defendant Selby proximately caused the Plaintiff to incur damages including but not limited to costs associated with procuring another employee to manage the operations, the costs to train his replacement, the costs associated with procuring board documents wrongfully withheld by Defendant Selby, and any other costs uncovered through discovery to be proved at trial. For these wrongful actions,

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

Plaintiff is entitled to a judgment against Defendant Selby for its actual and consequential damages, to be determined at trial.

### FOR A FOURTH CAUSE OF ACTION
### AS TO DEFENDANT SELBY AND DEFENDANT EGH
### (Interference with Prospective Contractual Relations)

72.    Plaintiff incorporates by reference all allegations contained in the preceding Paragraphs which are re-alleged and restated as if repeated verbatim below.  If any allegations herein are inconsistent with previous allegations, the inconsistent allegations are to be presumed as pleadings in the alternative.

73.    Plaintiff was in negotiations with Defendants TI regarding the post-control turnover of the Greeters Store, which was a prospective contractual relationship.

74.    Defendant Selby, acting individually and on behalf of Defendant EGH, was aware of the prospective contractual relationship between Plaintiff and Defendants TI regarding the Greeters Store when he improperly interfered with the turnover negotiations by using his position as general manager of Oldfield Club/OCA to take the prospective sale contract for his own personal gain.

75.    Defendants Selby and EGH's actions were improper, and those improper methods resulted in injury to the Plaintiff—most notably, the loss of the opportunity to own the iconic Greeters Store, to which they had every reasonable expectation. For this wrongful interference with the prospective contractual relationship, Plaintiff is entitled to judgment against Defendants Selby and EGH, jointly and severally, for actual, consequential, and punitive damages in an amount to be proven at trial, and any other relief the Court deems just.

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

**FOR A FIFTH CAUSE OF ACTION**
**AS TO DEFENDANTS TI, JOHN DOE DIRECTORS, AND DEFENDANT OLDFIELD**
**HOLDINGS**
**(Tortious Interference with Contractual Relations)**

76.    Plaintiff incorporates by reference all allegations contained in the preceding Paragraphs which are re-alleged and restated as if repeated verbatim below.  If any allegations herein are inconsistent with previous allegations, the inconsistent allegations are to be presumed as pleadings in the alternative.

77.    Plaintiff was a party and/or third party beneficiary to the contractual employment agreement between Defendant Selby and the Oldfield Club.  Defendants TI, John Doe Directors, and Defendant Oldfield Holdings knew or should have known this employment relationship existed.

78.    Defendant Selby breached that employment contract as described in detail above, and Defendants TI, the John Doe Directors, and Oldfield Holdings, through their clandestine negotiations with Selby to sell the Greeters Store out from under Plaintiff, tortiously encouraged and procured that breach, with no proper justification.  In doing so, these Defendants caused harm to and interfered with the negotiating process.

79.    Plaintiff has suffered actual damages as a result of Defendants TI, John Doe Directors, and Oldfield Holdings' actions in inducing Defendant Selby to breach his employment contract, including the costs to recruit, hire, and train his replacement, as well as significant attorney's fees and costs, and Plaintiff is therefore entitled to a judgment against these Defendants for such damages.

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

**FOR A SIXTH CAUSE OF ACTION**
**AS TO ALL DEFENDANTS**
**(Civil Conspiracy and Request for Declaratory Relief)**

80.    Plaintiff incorporates by reference all allegations contained in the preceding paragraphs which are re-alleged and restated as if repeated verbatim below. If any allegations herein are inconsistent with previous allegations, the inconsistent allegations are to be presumed as pleadings in the alternative.

81.    Plaintiff had a reasonable belief that the Greeters Store was to be turned over to the Plaintiff OCA/Club at the end of the control period as part of the common properties because of the Defendants' actions in the early stages of marketing the homes to the members and because a portion of their assessments were used for the upkeep of the store while it was owned and operated by Defendants TI.  In the alternative, Plaintiff had at least the reasonable expectation that it would have the right of first refusal should the Greeters Store ever be marketed and sold by Defendants TI. These prospective contractual relations to which Plaintiff reasonably had a right to expect in the turnover process were interfered with by all Defendants.

82.    As previously alleged, all Defendants covertly conspired for the purpose of depriving the Plaintiff of the opportunity to gain ownership of the Greeters Store.  This conspiracy took place in part after the time Defendants TI, as "bound parties," had agreed to a settlement procedure for negotiating with the Plaintiff in good faith per the dictates of Article 14 of the DCC&R.

83.    As the conspiracy unfolded and after an investigation by Plaintiff and Club, it became clear that the transfer of the Greeters Store was fashioned and designed to preempt any negotiations or possible settlements regarding the Greeters Store.

84.    As the sale foreclosed the possibility of a negotiated settlement on the Greeters Store issue and because it occurred solely as a result of the actions of all Defendants, and not by reason

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP07000315

of any actions of the Plaintiff or Club, Plaintiff is entitled to the following declarations and equitable relief by this court:

    a.  That the Greeters Store, under principles of equity and law, should be considered common property of OCA. As such it rightfully belongs to the OCA or to the Club and its members;

    b.  That all Defendants violated the terms and agreements for a negotiated process to settle all potential claims, one of which was the future control of the Greeters Store, and as a result the Plaintiff has been damaged;

    c.  That the Plaintiffs are entitled to attorney's fees and costs in that Defendants TI and John Doe Defendants, as bound parties, did not act in good faith in the settlement negotiations and foreclosed the same, prematurely ending any possible agreement. As such, they violated §14 of the DCC&R by the transfer of the Greeters Store during negotiations; and

    d.  That the Greeters Store is, under the principles of fairness and equity, a common property belonging to the OCA based on representations made by Defendants TI and John Doe Defendants during the control period. Specifically, representations were made to the OCA members in the form of assessments for its upkeep, maintenance, and taxes; the representation to home and lot owners in Oldfield that the store would be a part of any negotiated transfer when the declarant control turnover ended; and representations as to how the property would be ultimately transferred.

85.    In addition, Plaintiff has suffered other special damages in attempting to unwind the wrongful sale of the Greeters Store. Those special damages include attorney fees and various costs associated with the unwinding of the store transaction, the costs of relocating community services previously housed in the store, the loss of good will between Plaintiff and its former long-time employee and between Plaintiff and its developer, the costs to recruit and hire a replacement for Selby, the cost to bring this action, and other costs to be proven at trial.

**FOR A SEVENTH CAUSE OF ACTION**
**AS TO ALL DEFENDANTS**
**(Negligent Misrepresentation)**

86.    Plaintiff incorporates by reference all allegations contained in the preceding paragraphs which are re-alleged and restated as if repeated verbatim below. If any allegations herein are

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

inconsistent with previous allegations, the inconsistent allegations are to be presumed as pleadings in the alternative.

87.     All Defendants owed common law duties to deal fairly with the members of OCA as they were its sponsors, managers, persons, and/or agents upon which the community relied for its proper administration.

88.     The Defendants' duties to the OCA and community prohibited them from acting in a manner which may harm OCA and its members.  All Defendants had a pecuniary interest in the OCA's functioning as its Governing Documents intended and had a pecuniary interest in its proper management and transmittal of accurate information to its members.

89.     All Defendants had a duty to accurately represent the financial conditions of the OCA and to accurately transmit information they knew or should have known would be of interest to the OCA.

90.     All defendants, through their acts and omissions, made numerous false representations to the Plaintiff in their dealings with the Plaintiff and its members, including but not limited to the initial marketing and selling of homes and lots within the community, the management and funding of the association during the control period, and the information withheld regarding the Greeters Store. Plaintiff and its members justifiably relied on the inaccurate information provided to them throughout the years by the Defendants in deciding to purchase their homes and memberships in the Oldfield community, and because of those false representations, Plaintiff's members have been monetarily damaged.

91.     All Defendants breached their duties to act reasonably and to accurately transmit information to the Plaintiff and its members. As a direct result of Defendants' negligence and negligent misrepresentations, Plaintiff has suffered damages in the form of significantly

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP07000315

increased additional assessments, investigation costs to determine the nature and extent of the negligent, wrongful actions of the Defendants, extensive shortfalls in reserve accounts, and considerable attorney's fees and costs.

92.     Defendants Bald Eagle, through their agent/Board member, were complicit and worked in conjunction with Defendants TI by instructing their appointed board member, in the ordinary scope and course of his employment with Defendants Bald Eagle, to vote and partake in these wrongful acts to the benefit of Defendants TI.  As such, Defendants Bald Eagle are liable to Plaintiff under the doctrine of *respondeat superior*.

93.     All Defendants had a duty to transfer accurate information in a timely manner when such information was critical to the negotiated process surrounding the turnover. They breached this duty in following their own pecuniary interests, and their breaches have directly and negatively impacted the Plaintiff, for which Plaintiff is entitled to a judgment on this cause of action.

### FOR AN EIGHTH CAUSE OF ACTION
### AS TO DEFENDANTS TI AND THE JOHN DOE DIRECTORS
### (Negligent and Wrongful Acts)

94.     Plaintiff incorporates by reference all allegations contained in the preceding paragraphs which are re-alleged and restated as if repeated verbatim below. If any allegations herein are inconsistent with previous allegations, the inconsistent allegations are to be presumed as pleadings in the alternative.

95.     Defendants TI and the John Doe Directors had a duty to the members of OCA, represented now by the Plaintiff, to administer and manage the association properly, and for the benefit of the association members. Their duties included ensuring that accurate reserve fund studies were conducted routinely so that the projected capital contributions would be estimated correctly.

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

96.    Defendants TI and the John Doe Directors breached their duty to the Plaintiff and its members by wrongfully and negligently failing to update the capital asset replacement projection studies, which led to the significant underfunding of the capital reserve fund, as outlined above.

97.    Because of these Defendants' breach of that duty, Plaintiff has suffered actual damages including having to fund a severe deficit in the association's operating and capital reserve accounts and having to hire forensic accountants and reserve analysts in order to correct the damage caused by the negligent acts and omissions of these Defendants.

### FOR A NINTH CAUSE OF ACTION
### AS TO DEFENDANTS TI
### (Preliminary Injunction and Declaratory Judgment)

98.    Plaintiff incorporates by reference all allegations contained in the preceding paragraphs which are re-alleged and restated as if repeated verbatim below. If any allegations herein are inconsistent with previous allegations, the inconsistent allegations are to be presumed as pleadings in the alternative.

99.    Defendants continue to exert significant control over issues affecting the Plaintiff, including, *inter alia*, owning and controlling property within and adjacent to Oldfield and declarant rights, such as the annexation rights set forth in the governing documents.

100.    Defendants continue to owe a fiduciary duty to Plaintiff and its members.

101.    Upon information and belief, Defendants may exercise control in ways that damage the Plaintiff, to the sole benefit of Defendants. This includes, without limitation, any sale of the declarant rights and annexation of property into Oldfield.

102.    The damage sustained by the Plaintiff, if Defendants are allowed to continue or compound their detrimental actions, cannot be remedied by an award of monetary damages alone.

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

103.    Because of the irreparable harm Plaintiff will suffer if Defendants are allowed to continue to divest themselves of assets or sell or dispose of annexation rights, Plaintiff is entitled to a preliminary injunction prohibiting Defendants from exercising control over matters at Oldfield to the detriment of the Plaintiff and its members until the legal matters in this lawsuit are finally resolved.

104.    Additionally, Plaintiff requests that this Court issue a declaratory judgment order limiting the scope of Defendants' control, in light of Defendants' continuing fiduciary duties to the Plaintiff and its members pending the outcome of this lawsuit.

WHEREFORE, Plaintiff prays for judgment on all causes against the Defendants for actual, consequential, and punitive damages, in amounts to be determined at trial, and for a declaration regarding the issues set forth in Paragraphs 84 and 104 of this Complaint. Plaintiff also requests a preliminary injunction prohibiting Defendants TI from exerting control over the Plaintiff or its property or exercising rights to annexation pending this lawsuit and from divesting themselves of assets in an attempt to become judgment-proof or for bad faith leverage in negotiating the issues contained herein. Further, Plaintiff also requests an award for attorney's fees and costs, and for any other relief this Honorable Court deems proper. Finally, Plaintiff demands a trial by jury.

ELECTRONICALLY FILED - 2017 Feb 21 3:29 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

YOUNG CLEMENT RIVERS, LLP

s/Joseph E. DaPore
SC Bar No. 1544
P.O. Box 993, Charleston, SC  29402
(843) 720-5446; jdapore@ycrlaw.com

s/Jason A. Daigle
SC Bar No. 73308
P.O. Box 993, Charleston, SC 29402
(843)577-4000, jdaigle@ycrlaw.com

Attorneys for Plaintiff

Charleston, South Carolina

Dated:   February 21, 2017

ELECTRONICALLY FILED - 2017 Mar 03 12:35 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF BEAUFORT | ) | FOURTEENTH JUDICIAL CIRCUIT |
| | ) | |
| OLDFIELD COMMUNITY | ) | CASE NO. 2017-CP-07-00315 |
| ASSOCIATION | ) | |
| BY AND THROUGH ITS CURRENT | ) | |
| BOARD OF DIRECTORS FOR AND ON | ) | |
| BEHALF OF ITS MEMBERS, | ) | |
| , | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TI OLDFIELD DEVELOPMENT, LLC; | ) | |
| TI OLDFIELD OPERATIONS, LLC, BY | ) | |
| AND THROUGH THEIR RESPECTIVE | ) | |
| BOARD DIRECTORS JOHN DOE 1 | ) | |
| THROUGH 10, INDIVIDUALLY AND | ) | |
| AS DIRECTORS BETWEEN THE TIME | ) | |
| PERIODS OF 2010 THROUGH 2015 | ) | |
| (PRE-TURNOVER); PHILLIP | ) | |
| GALBREATH, INDIVIDUALLY AND | ) | **ACCEPTANCE OF SERVICE** |
| AS DIRECTOR OF OLDFIELD | ) | |
| COMMUNITY ASSOCIATION; SF | ) | |
| OPERATIONS, LLC; WILLIAM STOLZ, | ) | |
| INDIVIDUALLY AND AS MANAGER | ) | |
| OF SF OPERATIONS, LLC; OLDFIELD | ) | |
| HOLDINGS GA, LLC; JAMIE D. | ) | |
| SELBY, INDIVIDUALLY AND AS | ) | |
| MANAGING MEMBER OF ELLIOT | ) | |
| GROUP HOLDINGS, LLC; ELLIOT | ) | |
| GROUP HOLDINGS, LLC; BALD | ) | |
| EAGLE PARTNERS, LLC; AND BEP | ) | |
| OLDFIELD, LLC, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

I, Merritt Abney, Esquire, hereby accept service of the Summons and Complaint in the above-captioned matter on behalf of Defendant TI Oldfield Development, LLC this ___1ˢᵗ___ day of ___March___, 2017.

Merritt Abney, Esquire
Nelson, Mullins, Riley & Scarborough, LLP
P.O. Box 1806
Charleston, SC 29402

Charleston, South Carolina

ELECTRONICALLY FILED - 2017 Mar 03 12:35 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

ELECTRONICALLY FILED - 2017 Mar 03 12:35 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF BEAUFORT | ) | FOURTEENTH JUDICIAL CIRCUIT |
| | ) | |
| OLDFIELD COMMUNITY | ) | CASE NO. 2017-CP-07-00315 |
| ASSOCIATION | ) | |
| BY AND THROUGH ITS CURRENT | ) | |
| BOARD OF DIRECTORS FOR AND ON | ) | |
| BEHALF OF ITS MEMBERS, | ) | |
| , | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TI OLDFIELD DEVELOPMENT, LLC; | ) | |
| TI OLDFIELD OPERATIONS, LLC, BY | ) | |
| AND THROUGH THEIR RESPECTIVE | ) | |
| BOARD DIRECTORS JOHN DOE 1 | ) | |
| THROUGH 10, INDIVIDUALLY AND | ) | |
| AS DIRECTORS BETWEEN THE TIME | ) | |
| PERIODS OF 2010 THROUGH 2015 | ) | |
| (PRE-TURNOVER); PHILLIP | ) | |
| GALBREATH, INDIVIDUALLY AND | ) | **ACCEPTANCE OF SERVICE** |
| AS DIRECTOR OF OLDFIELD | ) | |
| COMMUNITY ASSOCIATION; SF | ) | |
| OPERATIONS, LLC; WILLIAM STOLZ, | ) | |
| INDIVIDUALLY AND AS MANAGER | ) | |
| OF SF OPERATIONS, LLC;  OLDFIELD | ) | |
| HOLDINGS GA, LLC; JAMIE D. | ) | |
| SELBY, INDIVIDUALLY AND AS | ) | |
| MANAGING MEMBER OF  ELLIOT | ) | |
| GROUP HOLDINGS, LLC; ELLIOT | ) | |
| GROUP HOLDINGS, LLC; BALD | ) | |
| EAGLE  PARTNERS, LLC; AND BEP | ) | |
| OLDFIELD, LLC, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

I, Merritt Abney, Esquire, hereby accept service of the Summons and Complaint in the above-captioned matter on behalf of Defendant TI Oldfield Operations, LLC this _1st_ day of _March_, 2017.

Merritt Abney, Esquire
Nelson, Mullins, Riley & Scarborough, LLP
P.O. Box 1806
Charleston, SC 29402

Charleston, South Carolina

ELECTRONICALLY FILED - 2017 Mar 03 12:35 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

ELECTRONICALLY FILED - 2017 Mar 03 12:35 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

STATE OF SOUTH CAROLINA    )    IN THE COURT OF COMMON PLEAS
        )
COUNTY OF BEAUFORT    )    FOURTEENTH JUDICIAL CIRCUIT
        )
OLDFIELD COMMUNITY    )    CASE NO. 2017-CP-07-00315
ASSOCIATION    )
BY AND THROUGH ITS CURRENT    )
BOARD OF DIRECTORS FOR AND ON    )
BEHALF OF ITS MEMBERS,    )
,    )
    )
    )
    PLAINTIFF,    )
    )
    vs.    )
    )
TI OLDFIELD DEVELOPMENT, LLC;    )
TI OLDFIELD OPERATIONS, LLC, BY    )
AND THROUGH THEIR RESPECTIVE    )
BOARD DIRECTORS JOHN DOE 1    )
THROUGH 10, INDIVIDUALLY AND    )
AS DIRECTORS BETWEEN THE TIME    )
PERIODS OF 2010 THROUGH 2015    )
(PRE-TURNOVER); PHILLIP    )
GALBREATH, INDIVIDUALLY AND    )    **ACCEPTANCE OF SERVICE**
AS DIRECTOR OF OLDFIELD    )
COMMUNITY ASSOCIATION; SF    )
OPERATIONS, LLC; WILLIAM STOLZ,    )
INDIVIDUALLY AND AS MANAGER    )
OF SF OPERATIONS, LLC;  OLDFIELD    )
HOLDINGS GA, LLC; JAMIE D.    )
SELBY, INDIVIDUALLY AND AS    )
MANAGING MEMBER OF  ELLIOT    )
GROUP HOLDINGS, LLC; ELLIOT    )
GROUP HOLDINGS, LLC; BALD    )
EAGLE  PARTNERS, LLC; AND BEP    )
OLDFIELD, LLC,    )
    )
    DEFENDANTS.    )
    )

        I, Merritt Abney, Esquire, hereby accept service of the Summons and Complaint in the above-captioned matter on behalf of Defendant SF Operations, LLC this ___1st___ day of

_March_____, 2017.

Merritt Abney, Esquire
Nelson, Mullins, Riley & Scarborough, LLP
P.O. Box 1806
Charleston, SC 29402

Charleston, South Carolina

ELECTRONICALLY FILED - 2017 Mar 03 12:35 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

ELECTRONICALLY FILED - 2017 Mar 03 12:35 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF BEAUFORT | ) | FOURTEENTH JUDICIAL CIRCUIT |
| | ) | |
| OLDFIELD COMMUNITY | ) | CASE NO. 2017-CP-07-00315 |
| ASSOCIATION | ) | |
| BY AND THROUGH ITS CURRENT | ) | |
| BOARD OF DIRECTORS FOR AND ON | ) | |
| BEHALF OF ITS MEMBERS, | ) | |
| , | ) | |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TI OLDFIELD DEVELOPMENT, LLC; | ) | |
| TI OLDFIELD OPERATIONS, LLC, BY | ) | |
| AND THROUGH THEIR RESPECTIVE | ) | |
| BOARD DIRECTORS JOHN DOE 1 | ) | |
| THROUGH 10, INDIVIDUALLY AND | ) | |
| AS DIRECTORS BETWEEN THE TIME | ) | |
| PERIODS OF 2010 THROUGH 2015 | ) | |
| (PRE-TURNOVER); PHILLIP | ) | |
| GALBREATH, INDIVIDUALLY AND | ) | **ACCEPTANCE OF SERVICE** |
| AS DIRECTOR OF OLDFIELD | ) | |
| COMMUNITY ASSOCIATION; SF | ) | |
| OPERATIONS, LLC; WILLIAM STOLZ, | ) | |
| INDIVIDUALLY AND AS MANAGER | ) | |
| OF SF OPERATIONS, LLC; OLDFIELD | ) | |
| HOLDINGS GA, LLC; JAMIE D. | ) | |
| SELBY, INDIVIDUALLY AND AS | ) | |
| MANAGING MEMBER OF ELLIOT | ) | |
| GROUP HOLDINGS, LLC; ELLIOT | ) | |
| GROUP HOLDINGS, LLC; BALD | ) | |
| EAGLE PARTNERS, LLC; AND BEP | ) | |
| OLDFIELD, LLC, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

I, Merritt Abney, Esquire, hereby accept service of the Summons and Complaint in the above-captioned matter on behalf of Defendant William Stolz, as Manager of SF Operations, LLC this ___1st___ day of ___March___, 2017.

Merritt Abney, Esquire
Nelson, Mullins, Riley & Scarborough, LLP
P.O. Box 1806
Charleston, SC 29402

Charleston, South Carolina

ELECTRONICALLY FILED - 2017 Mar 03 12:35 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

ELECTRONICALLY FILED - 2017 Mar 03 12:35 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS
)
COUNTY OF BEAUFORT ) FOURTEENTH JUDICIAL CIRCUIT
)
OLDFIELD COMMUNITY ) CASE NO. 2017-CP-07-00315
ASSOCIATION )
BY AND THROUGH ITS CURRENT )
BOARD OF DIRECTORS FOR AND ON )
BEHALF OF ITS MEMBERS, )
, )
)
PLAINTIFF, )
)
vs. )
)
TI OLDFIELD DEVELOPMENT, LLC; )
TI OLDFIELD OPERATIONS, LLC, BY )
AND THROUGH THEIR RESPECTIVE )
BOARD DIRECTORS JOHN DOE 1 )
THROUGH 10, INDIVIDUALLY AND )
AS DIRECTORS BETWEEN THE TIME )
PERIODS OF 2010 THROUGH 2015 )
(PRE-TURNOVER); PHILLIP )
GALBREATH, INDIVIDUALLY AND ) **ACCEPTANCE OF SERVICE**
AS DIRECTOR OF OLDFIELD )
COMMUNITY ASSOCIATION; SF )
OPERATIONS, LLC; WILLIAM STOLZ, )
INDIVIDUALLY AND AS MANAGER )
OF SF OPERATIONS, LLC;  OLDFIELD )
HOLDINGS GA, LLC; JAMIE D. )
SELBY, INDIVIDUALLY AND AS )
MANAGING MEMBER OF ELLIOT )
GROUP HOLDINGS, LLC; ELLIOT )
GROUP HOLDINGS, LLC; BALD )
EAGLE  PARTNERS, LLC; AND BEP )
OLDFIELD, LLC, )
)
DEFENDANTS. )
)
_____ )

    I, Merritt Abney, Esquire, hereby accept service of the Summons and Complaint in the

above-captioned matter on behalf of Defendant Oldfield Holdings GA, LLC this _1st_ day

of _March_, 2017.

Merritt Abney, Esquire
Nelson, Mullins, Riley & Scarborough, LLP
P.O. Box 1806
Charleston, SC 29402

Charleston, South Carolina

ELECTRONICALLY FILED - 2017 Mar 03 12:35 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315


MAR 03 2017
BY:_____



WOMBLE
CARLYLE
SANDRIDGE
& RICE
A LIMITED LIABILITY
PARTNERSHIP

5 Exchange Street
Charleston, SC 29401

*Mailing Address:*
Post Office Box 999
Charleston, SC 29402
Telephone: (843) 722-3400
Fax: (843) 723-7398
www.wcsr.com

Matthew E. Tillman
Attorney at Law
Direct Dial: 843-720-4629
E-mail: mtillman@wcsr.com

March 3, 2017

**VIA EMAIL AND U.S. MAIL**
Joseph E. DaPore, Esq.
Young Clement Rivers
25 Calhoun Street, Suite 400
Charleston, SC 29401

Re:    Oldfield Community Association, by and through its current board of directors for
       and on behalf of its members vs. TI Oldfield Development, LLC, et al.
       Case No. 2017-CP-07-00315
       WCSR File No.:101639.0001.9

Dear Mr. DaPore:

Enclosed please find the executed Acceptance of Service for filing in the above-captioned
case.

Sincerely,

WOMBLE CARLYLE SANDRIDGE & RICE, LLP

Matthew E. Tillman

MET/mmm
Enclosure

ELECTRONICALLY FILED - 2017 Mar 03 2:50 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

ELECTRONICALLY FILED - 2017 Mar 03 2:50 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF BEAUFORT | FOURTEENTH JUDICIAL CIRCUIT |
| OLDFIELD COMMUNITY ASSOCIATION BY AND THROUGH ITS CURRENT BOARD OF DIRECTORS FOR AND ON BEHALF OF ITS MEMBERS, | CASE NO. 2017-CP-07-00315 |
| PLAINTIFF, | |
| vs. | |
| TI OLDFIELD DEVELOPMENT, LLC; TI OLDFIELD OPERATIONS, LLC, BY AND THROUGH THEIR RESPECTIVE BOARD DIRECTORS JOHN DOE 1 THROUGH 10, INDIVIDUALLY AND AS DIRECTORS BETWEEN THE TIME PERIODS OF 2010 THROUGH 2015 (PRE-TURNOVER); PHILLIP GALBREATH, INDIVIDUALLY AND AS DIRECTOR OF OLDFIELD COMMUNITY ASSOCIATION; SF OPERATIONS, LLC; WILLIAM STOLZ, INDIVIDUALLY AND AS MANAGER OF SF OPERATIONS, LLC; OLDFIELD HOLDINGS GA, LLC; JAMIE D. SELBY, INDIVIDUALLY AND AS MANAGING MEMBER OF ELLIOT GROUP HOLDINGS, LLC; ELLIOT GROUP HOLDINGS, LLC; BALD EAGLE PARTNERS, LLC; AND BEP OLDFIELD, LLC, | ACCEPTANCE OF SERVICE |
| DEFENDANTS. | |

I, Daniel Q. Orvin, Esquire, hereby accept service of the Summons and Complaint in the above-captioned matter on behalf of Defendant BEP Oldfield, LLC this ___3___ day of ___MARCH___, 2017.

Daniel Q. Orvin
Womble Carlyle Sandridge & Rice, LLP
5 Exchange Street
Charleston, SC 29401

Charleston, South Carolina

ELECTRONICALLY FILED - 2017 Mar 03 2:50 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

ELECTRONICALLY FILED - 2017 Mar 13 4:25 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

## AFFIDAVIT OF SERVICE

State of South Carolina                County of Beaufort                    Common Pleas Court

Case Number: 2017-CP-07-00315

Plaintiff:
OLDFIELD COMMUNITY ASSOCIATION BY AND THROUGH IT'S CURRENT
BOARD OF DIRECTORS FOR AN ON BEHALF OF ITS MEMBERS

vs.

Defendant:
TI OLDFIELD DEVELOPMENT, LLC ET AL

For:
Joseph E. Dapore, Esq.
Young Clement Rivers, LLP
25 Calhoun Street
Suite 400
Charleston, SC 29401

Received by PROCESS SERVICE, INC. to be served on **ELLIOT GROUP HOLDINGS, LLC, 1591 SAVANNAH HIGHWYA STE 201, CHARLESTON, SC 29407.**

I, John R. Gamble, being duly sworn, depose and say that on the **8th day of March, 2017** at 12:20 pm, I:

SERVED ELLIOT GROUP HOLDINGS, LLC by delivering a true copy of the **LETTER; SUMMONS;COMPLAINT;** to, UNITED STATES CORPORATION AGENTS, INC, Registered Agent for ELLIOT GROUP HOLDINGS, LLC by serving SAKYRA FIALL, RECEPTIONIST for UNITED STATES CORPORATION AGENTS, INC at the address of, 1591 SAVANNAH HIGHWYA STE 201, CHARLESTON, SC 29407 with the date and hour endorsed hereon by me.

I am over eighteen and have no interest in the above action.

John R. Gamble
PROCESS SERVER

Subscribed and Sworn to before me on the 9th day of
March, 2017 by the affiant who is personally known to
me.

NOTARY PUBLIC
Commission Expires: 5-6-19

PROCESS SERVICE, INC.
P.O. Box 20097
Charleston, SC 29413
(843) 577-2355

Our Job Serial Number: LEX-2017000628
Ref: 15769-20160122

Copyright © 1992-2017 Database Services, Inc. - Process Server's Toolbox V7.1i

ELECTRONICALLY FILED - 2017 Mar 13 4:25 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

UNITED STATES CORPORATION AGENTS, INC.

# SERVICE OF PROCESS ACCEPTANCE FORM

☒ WALK-IN               ☐ MAIL

LOCATION: 1585 Savannah Hwy Chas SC    DATE: 3/8/17    TIME: 12:20 pm

NAME OF COMPANY BEING SERVED: Elliot Group Holdings, LLC

SERVER'S NAME: John R Cambio

SERVER'S ADDRESS: 44 N Hanover St    City: Chas    State: SC    Zip: 29405

SERVER'S PHONE/EMAIL: (843) 696-1703    Telephone #:    Email Address: Processservice inc 2gmail.com
processservice inc 2gmail.com

SERVER'S ACKNOWLEDGMENT

I confirm serving documents to *United States Corporation Agents, Inc.* who is the Registered Agent for the company being served.

_____    3/8/17
Server's Signature (Necessary only for a "walk-in")    Date

Sakura Hall
Acceptor's Name (Please print clearly)

_____    3/8/17
Acceptor's Signature    Date

SHIPMENT TRACKING NUMBER:

FAX OR EMAIL TO THE RECIPIENT LISTED ON THE USCA CONTACT LIST
WITHIN 2 HOURS OR BEFORE THE END OF THE BUSINESS DAY.

ATTACH THIS COVER PAGE TO THE DOCUMENT AND SEND VIA
PRIORITY OVERNIGHT
TO THE CONTACT LISTED ON THE CURRENT VERSION OF THE USCA CONTACT LIST.

## AFFIDAVIT OF FOREIGN SERVICE

STATE OF SOUTH CAROLINA

COUNTY OF BEAUFORT

Case No.    2017CP070315

OLDFIELD COMMUNITY ASSOCIATION    Plaintiff,

VS.

DECAIN, MARK SCOTT    Defendant

STATE OF MARYLAND,            }
COUNTY OF MONTGOMERY    }        § :

DSIII MICHELE J TRIGIANI, Deputy Sheriff, being duly sworn, deposes and says:

That I am over 21 years of age, not a party to this action, and reside in the State of Maryland.

That I attempted to serve the SUMMONS, COMPLAINT(JURY TRIAL DEMANDED) Annexed hereto, upon DECAIN, MARK SCOTT, the Defendant named in the action, and found VIRTUAL WORKSITE ONLY: PER AMANDA(PLAINTIFF) DEF CONTACTED THEM AND SHE ADVISED TO NON-EST SUMMONS. DEF IS WORKING OUT OF WASHINGTON D.C.

That I attempted service on 3/7/17 @0750, 3/9/17 @1035 at the following address: 4800 HAMPDEN LA STE 200 BETHESDA, MD 20814.

Therefore, I am returning the said SUMMONS, COMPLAINT(JURY DEMAMDED) NON-EST this 9TH day of MARCH, 2017.

DSIII MICHELE J. TRIGIANI
Deputy Sheriff, Montgomery County, Maryland

Sworn to before me this 13th day of March , 20 17 .

Notary Public, State of Maryland

My commission expires: 2/16/2021

MT:oi

Document1/1-3/10/2017

ELECTRONICALLY FILED - 2017 Mar 21 8:57 AM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

ELECTRONICALLY FILED - 2017 Mar 23 12:25 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF BEAUFORT | ) | FOURTEENTH JUDICIAL CIRCUIT |
| | ) | |
| OLDFIELD COMMUNITY | ) | CASE NO. 2017-CP-07-00315 |
| ASSOCIATION | ) | |
| BY AND THROUGH ITS CURRENT | ) | |
| BOARD OF DIRECTORS FOR AND ON | ) | |
| BEHALF OF ITS MEMBERS, | ) | |
| , | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TI OLDFIELD DEVELOPMENT, LLC; | ) | |
| TI OLDFIELD OPERATIONS, LLC, BY | ) | |
| AND THROUGH THEIR RESPECTIVE | ) | |
| BOARD DIRECTORS JOHN DOE 1 | ) | |
| THROUGH 10, INDIVIDUALLY AND | ) | |
| AS DIRECTORS BETWEEN THE TIME | ) | |
| PERIODS OF 2010 THROUGH 2015 | ) | |
| (PRE-TURNOVER); PHILLIP | ) | ACCEPTANCE OF SERVICE |
| GALBREATH, INDIVIDUALLY AND | ) | |
| AS DIRECTOR OF OLDFIELD | ) | |
| COMMUNITY ASSOCIATION; SF | ) | |
| OPERATIONS, LLC; WILLIAM STOLZ, | ) | |
| INDIVIDUALLY AND AS MANAGER | ) | |
| OF SF OPERATIONS, LLC;  OLDFIELD | ) | |
| HOLDINGS GA, LLC; JAMIE D. | ) | |
| SELBY, INDIVIDUALLY AND AS | ) | |
| MANAGING MEMBER OF  ELLIOT | ) | |
| GROUP HOLDINGS, LLC; ELLIOT | ) | |
| GROUP HOLDINGS, LLC; BALD | ) | |
| EAGLE  PARTNERS, LLC; AND BEP | ) | |
| OLDFIELD, LLC, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

I, Jared H. Garraux, Esquire, hereby accept service of the Summons and Complaint in the

above-captioned matter on behalf of Defendant Phillip Galbreath, individually and as Director of

Oldfield    Community    Association    this    _____8th_____    day    of    _____MARCH_____, 2017.

_____
Jared H. Garraux, Esquire
Richardson Plowden & Robinson, PA
P.O. Drawer 7788
Columbia, SC 29202

Columbia, South Carolina

ELECTRONICALLY FILED - 2017 Mar 23 12:25 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

ELECTRONICALLY FILED - 2017 Mar 23 12:27 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF BEAUFORT | ) | FOURTEENTH JUDICIAL CIRCUIT |
| | ) | |
| OLDFIELD COMMUNITY | ) | CASE NO. 2017-CP-07-00315 |
| ASSOCIATION | ) | |
| BY AND THROUGH ITS CURRENT | ) | |
| BOARD OF DIRECTORS FOR AND ON | ) | |
| BEHALF OF ITS MEMBERS, | ) | |
| , | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TI OLDFIELD DEVELOPMENT, LLC; | ) | |
| TI OLDFIELD OPERATIONS, LLC, BY | ) | |
| AND THROUGH THEIR RESPECTIVE | ) | |
| BOARD DIRECTORS JOHN DOE 1 | ) | |
| THROUGH 10, INDIVIDUALLY AND | ) | |
| AS DIRECTORS BETWEEN THE TIME | ) | |
| PERIODS OF 2010 THROUGH 2015 | ) | |
| (PRE-TURNOVER); PHILLIP | ) | ACCEPTANCE OF SERVICE |
| GALBREATH, INDIVIDUALLY AND | ) | |
| AS DIRECTOR OF OLDFIELD | ) | |
| COMMUNITY ASSOCIATION; SF | ) | |
| OPERATIONS, LLC; WILLIAM STOLZ, | ) | |
| INDIVIDUALLY AND AS MANAGER | ) | |
| OF SF OPERATIONS, LLC; OLDFIELD | ) | |
| HOLDINGS GA, LLC; JAMIE D. | ) | |
| SELBY, INDIVIDUALLY AND AS | ) | |
| MANAGING MEMBER OF ELLIOT | ) | |
| GROUP HOLDINGS, LLC; ELLIOT | ) | |
| GROUP HOLDINGS, LLC; BALD | ) | |
| EAGLE PARTNERS, LLC; AND BEP | ) | |
| OLDFIELD, LLC, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| _____ | ) | |

I, Jared H. Garraux, Esquire, hereby accept service of the Summons and Complaint in the

above-captioned matter on behalf of the John Doe Defendants 1 through 10, individually and as

directors appointed by either TI Oldfield Operations, LLC or TI Development, LLC to the



Oldfield Community Association board for the time periods from 2010 through 2015 (Pre-Turnover) as outlined in the Complaint in the above-captioned matter filed on February 21, 2017,

this _____8th_____ day of _____MARCH_____, 2017.

Jared H. Gafraux, Esquire
Richardson Plowden & Robinson, PA
P.O. Drawer 7788
Columbia, SC 29202

Columbia, South Carolina

ELECTRONICALLY FILED - 2017 Mar 23 12:27 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700315